OPINION OF THE COURT
Edward J. McLaughlin, J.
Under the present New York statutory scheme a putative father of a child is free to file a petition seeking an order of filiation regardless of whether the child has been surrendered to an authorized agency. By surrendering the child to the authorized agency, the father gives up whatever rights he may have with regard to the child. He does not, however, surrender his privilege to bestow benefits upon the child through asserting his paternity.
On May 6,1983 a motion was filed to dismiss a paternity petition filed with the court on March 11, 1983. Movant argues that the petition brought by John H. Hemingway, petitioner, should be dismissed because petitioner signed an irrevocable surrender of his rights to the child for whom an order of filiation is sought to Catholic Charities of the Roman Catholic Diocese of Syracuse, New York, Inc., on February 21, 1983. No revocation or recision of that surrender document was made, although petitioner wrote a letter to revoke the document on May 17, 1983, after obtaining an attorney.
Respondent argues that petitioner is precluded from making any claim as to the paternity of the child in question.
*254 Petitioner’s attorney filed an answering affidavit on May 17, 1983. He states that the surrender certificate acknowledged on February 21, 1983 and signed by petitioner “is null and void on the grounds of fraud, duress, coercion, lack of understanding, misinformation and total failure of proper and constitutional procedures in accordance with the Social Services Law in the State of New York.” He further argues that respondent is not precluded from making a claim of paternity because he signed the surrender document.
On May 20, 1983 the motion came before the court for argument. Attorneys for both parties appeared. The court reserved decision.
An examination of the instrument of surrender reveals that while it was signed by petitioner, witnessed by one Cynthia Lorch-Miller and notarized by Eloise J. LeFlore, there is no evidence that the instrument was recorded in the office of the county clerk. (Social Services Law, § 384, subd 3, par [b].) Since it is unrecorded it may have the effect of a contract, but it does not have the effect of a surrender instrument made pursuant to section 384 of the Social Services Law. Nor is there any evidence that the agency petitioned the court for approval of the surrender instrument with notice to petitioner. (Social Services Law, § 384, subd 4.) While approval of a surrender by a court is not necessary for such a surrender to be valid (Social Services Law, § 384, subd 4), seeking such judicial approval protects the agency from problems such as this, for the law is clear that “[n]o person who has received such notice and been afforded an opportunity to be heard may challenge the validity of a surrender approval pursuant to [subdivision 4 of section 384 of the Social Services Law] in any other proceeding.” (Social Services Law, § 384, subd 4.) Here, however, since the purported surrender instrument has not been filed with the county clerk nor approved by a court, whatever effect it may have is beyond the competency of this court to determine. (Matter of Thomson, 79 AD2d 880; Matter of Borkowski v Borkowski, 38 AD2d 752.) In any event, for purposes of this motion it makes no *255 difference whether or not the surrender document is or is not valid, for the result is the same.
Article 5 of the Family Court Act states that “[i]f the petitioner is a person alleging to be the father, the proceeding may be originated at any time prior to the child’s eighteenth birthday”. (Family Ct Act, § 517, subd [c].) A person alleging to be the father (Family Ct Act, § 522), must file a verified petition alleging that he is the child’s father. (Family Ct Act, § 523.) In an article 5 proceeding the word “child” refers to a child born out of wedlock (Family Ct Act, § 512, subd [b]); “father” refers to the father of a child born out of wedlock. (Family Ct Act, § 512, subd [d].) There are no restrictions upon the eligibility of a putative father who wishes to bring a paternity proceeding.
The court is authorized by statute to make an order of filiation “[i]n any proceeding in the family court, whether under [the Family Court Act] or under any other law, if there is an allegation or statement in a petition that a person is the father of a child who is a party to the proceeding or also is a subject of the proceeding”. (Family Ct Act, § 564, subd [a].) Such an order may be entered without a hearing if the father waives his rights. (Family Ct Act, § 564.) Thus, it is clear that the Legislature has carefully developed a legislative scheme to assist putative fathers when they wish to establish filiation.
Case law also makes it clear that the putative father is unrestrained in his right to assert his paternity of a child born out of wedlock. For instance, a putative father has been found to have a right to bring a paternity action although the mother of the child is dead and was under 17 at the time that conception occurred. (Matter of La Croix v Deyo, 108 Misc 2d 382.) Then, too, when a married woman is a party to a paternity proceeding, nonaccess by the husband must be proved. (Matter of Hanley v Wilcox, 57 AD2d 697.) Indeed, the court has jurisdiction to enter an order of filiation even when no support for the child is sought or needed and the child’s mother has remarried and wants nothing to do with the putative father. (Matter of Kordek v Wood, 90 AD2d 209.)
*256 Accordingly, for the reasons set forth in this decision the motion to dismiss the petition is denied. Trial on the matter is scheduled for October 27, 1983.